**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**J. DIRK CARNAHAN**
Vincennes, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ADAM MORRIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 14A05-1209-CR-495 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DAVIESS SUPERIOR COURT
The Honorable Mark R. McConnell, Special Judge
Cause No. 14D01-0910-FC-806

**April 9, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Adam Morris appeals the one-year sentence and order of restitution imposed following his conviction for Class A misdemeanor operating a vehicle while intoxicated ("OWI"). We affirm in part and reverse in part.

**Issues**

The restated issues before us are:

I.    whether Morris's guilty plea waived his ability to challenge his sentence on direct appeal;

II.   whether Morris's sentence is inappropriate; and

III.  whether the trial court properly ordered Morris to pay $14,972.45 in restitution.

**Facts**

In the early morning of October 4, 2009, Morris was driving an ATV in Daviess County and was involved in an accident with another ATV. Morris's fiancée, Jennifer Celeste, was riding on the back of Morris's ATV and had been thrown from it, causing serious head injuries. The first responding officer noticed that Morris smelled of alcohol and had slurred speech, bloodshot eyes, unsteady balance, and poor manual dexterity. Morris agreed to take a portable breath test, which registered an alcohol content of .138. A later blood test indicated Morris had a blood alcohol content of .158. Celeste died from her injuries later in the morning of October 4.

On October 21, 2009, the State charged Morris with Class C felony causing death while operating a vehicle with a blood alcohol equivalent of .08 or more. On July 9,

2

2012, Morris agreed to plead guilty to the lesser included offense of Class A misdemeanor OWI. The plea agreement provided that Morris "shall be sentenced at the discretion of the Court," but made no mention of restitution. App. p. 33. The agreement also noted certain required terms of probation, including mandatory drug and alcohol testing, although it did not expressly state that Morris would be receiving a term of probation. The agreement further stated that Morris was forfeiting "all grounds for review of any aspect of this case whether by appeal or post-conviction relief" and that he "knowingly, intelligently, and voluntarily waives her [sic] right to challenge the conviction or sentence on this [sic] basis that it is erroneous." Id. at 35.

On September 28, 2012, the trial court sentenced Morris to a term of one year, fully executed. It also ordered Morris to pay $14,972.45 to Celeste's family as restitution related to her funeral expenses. Morris now appeals.

**Analysis**

*I. Waiver*

Before turning to the merits, we address whether Morris's guilty plea waived the ability to challenge his sentence on direct appeal.[1] It is clear that "a defendant may waive the right to appellate review of his sentence as part of a written plea agreement." Creech v. State, 887 N.E.2d 73, 75 (Ind. 2008). A waiver of that kind should be given effect if "'the record clearly demonstrates that it was made knowingly and voluntarily.'" Id. (quoting United States v. Williams, 184 F.3d 666, 668 (7th Cir. 1999)). The specific

---

[1] The State acknowledges that the ability to seek post-conviction review of a guilty plea cannot be waived. See Creech v. State, 887 N.E.2d 73, 75-76 (Ind. 2008).

waiver that was upheld in <u>Creech</u> stated, "I hereby waive my right to appeal my sentence so long as the Judge sentences me within the terms of my plea agreement." <u>Id.</u> at 74. Other cases following <u>Creech</u> that have found waiver addressed similar statements in plea agreements. <u>See</u> <u>Bowling v. State</u>, 960 N.E.2d 837, 841 (Ind. Ct. App. 2012), <u>trans. denied</u>. Still other cases have found waiver where the plea agreement said, "Defendant further waives the right (under Indiana Appellate Rule 7 and I.C. 35-38-1-15 or otherwise) to review of the sentence imposed," <u>Brattain v. State</u>, 891 N.E.2d 1055, 1057 (Ind. Ct. App. 2008), or that the defendant had waived "the right to challenge the 'reasonableness' of the Court's sentence under Appellate Rule 7(B), waived the right to challenge the Court's findings as to aggravating and mitigating circumstances, and waived the right to challenge the weighing of aggravating and mitigating circumstances," <u>Buchanan v. State</u>, 956 N.E.2d 124, 125 (Ind. Ct. App. 2011).

The purported waiver of the right to appeal in this case was much less clear than the waivers in the above cases. There was, first, a general waiver of appellate review "of any aspect of this case" and a more specific waiver of the ability to challenge an "erroneous" sentence. App. p. 35. In legal terms, an "erroneous" sentence is not the same as an "inappropriate" sentence. An "erroneous" sentence, which may be attacked by a motion to correct erroneous sentence under Indiana Code Section 35-38-1-5, is one that is erroneous "on its face" without reference to proceedings before, during, or after trial. <u>Davis v. State</u>, 937 N.E.2d 8, 10-11 (Ind. Ct. App. 2010). Our supreme court has recently observed that "the 'appropriateness' of a sentence has no bearing on whether a

4

sentence is erroneous . . . ." Kimbrough v. State, 979 N.E.2d 625, 630 (Ind. 2012). Even when a trial court has acted within its lawful discretion when imposing sentence, that sentence still may be characterized by an appellate court as "inappropriate" under Indiana Appellate Rule 7(B). Id. at 629.

Plea agreements are contractual in nature, and the general rule is that any ambiguities in such agreements must be construed against the State because the State ordinarily drafts them. Valenzuela v. State, 898 N.E.2d 480, 482 (Ind. Ct. App. 2008), trans. denied. We conclude that the purported waiver provisions in the boilerplate plea agreement drafted by the State here are ambiguous as to whether Morris was giving up his right to challenge his sentence as inappropriate under Rule 7(B). As such, we will construe that ambiguity against the State and give Morris the benefit of the doubt and address the appropriateness of his sentence.[2] We also believe it is clear that any purported waiver could not preclude Morris from challenging a sentencing term that exceeded the scope of the plea agreement, as it would constitute a violation of the agreement itself by the trial court. See id.

## II. Appropriateness

Before turning to whether Morris's sentence is inappropriate, we note that he also alleges that the trial court abused its discretion in sentencing him. However, it is clear that abuse of discretion review of a sentence, which concerns a trial court's duty to issue a sentencing statement along with its findings of aggravators and mitigators, has no place

---

[2] We need not address whether this waiver could have affected abuse of discretion review of a sentence, given our discussion below.

in reviewing a misdemeanor sentence. See Cuyler v. State, 798 N.E.2d 243, 246 (Ind. Ct. App. 2003), trans. denied; see also Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007) (stating that post-Blakely revisions to sentencing statutes included sentencing statement requirement "whenever imposing sentence for a felony offense"). We will not further address Morris's abuse of discretion claims.

We now assess whether Morris's one-year fully executed sentence is inappropriate under Rule 7(B) in light of his character and the nature of the offense. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given

6

case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

Regarding the nature of the offense, Morris was involved in a very serious ATV accident while he had a blood alcohol content well above the per se legal limit of .08. The minimum facts necessary to support Morris's conviction for Class A misdemeanor OWI were that he operated a vehicle while intoxicated in a manner that endangered a person. See Ind. Code § 9-30-5-2(b). Morris's involvement in a very serious accident went well beyond that minimum.

Morris argues that we should not consider the fact of Celeste's death as evidence of the egregiousness of the offense, because the State agreed to dismiss the charge of operating with a BAC exceeding .08 resulting in death in exchange for his guilty plea. Morris cites Farmer v. State, 772 N.E.2d 1025, 1027 (Ind. Ct. App. 2002), which held that a trial court cannot rely on facts underlying charges that have been dismissed as part of a plea agreement as aggravating circumstances. Our supreme court recently decided Bethea v. State, No. 18S05-1206-PC-304 (Ind. March 12, 2013), in which it effectively overruled Farmer and similar cases, such as Roney v. State, 872 N.E.2d 192 (Ind. Ct. App. 2007). Rather, the court held that unless a plea agreement expressly forecloses the possibility of the trial court enhancing a sentence based on elements or evidence related to charges dismissed in exchange for the plea, "it is not necessary for a trial court to turn

7

a blind eye to the facts of the incident that brought the defendant before them." Bethea, slip op. at p. 12. Here, there was nothing in Morris's plea agreement that forbid consideration of the undisputed fact that Celeste died as a result of this accident in considering what sentence to impose. As such, we conclude that the severity of the accident, including Celeste's death, makes this particular offense very egregious, much more so than the "typical" Class A misdemeanor OWI.

Regarding Morris's character, it is true as he argues that he pled guilty. However, a guilty plea may not be entitled to much weight in considering a sentence if it is clear the decision to plead guilty was merely a pragmatic one because of the weight of the State's evidence. Rogers v. State, 878 N.E.2d 269, 273 (Ind. Ct. App. 2007), trans. denied. Again, there appears to be no doubt here that the ATV accident resulted in Celeste's death, and Morris received a significant benefit from the plea agreement in the dismissal of the C felony charge in exchange for an A misdemeanor conviction. Morris also has no prior criminal convictions. He was, however, charged for operating a vehicle with a BAC exceeding .15 twice before, in 2008 and 2003. The 2008 charge was dismissed without explanation, and the 2003 charge was dismissed after Morris successfully completed a pre-trial diversion program. Although those charges do not technically constitute a criminal history because they were never reduced to convictions, they still indicate that Morris had twice before been subjected to the police power of the State and was specifically warned of the dangers of OWI but was not deterred from committing the present offense. See Cotto v. State, 829 N.E.2d 520, 526 (Ind. 2005). We conclude

Morris's one-year executed sentence is not inappropriate in light of the nature of the offense and his character.

In a related argument, Morris argues that the trial court violated the plea agreement by failing to suspend any portion of his sentence to probation. He notes that the plea agreement makes specific reference to required terms of probation and argues that this necessarily implies that the trial court had to impose a term of probation. We disagree. The listing of required terms of probation clearly was part of a boilerplate plea agreement that would apply in the event the trial court decided to exercise its discretion to impose probation. Regarding that discretion, the plea agreement was very clear in stating that the trial court had unfettered discretion in choosing what sentence to impose. To the extent Morris argues that his guilty plea was involuntary because he was under the impression that the trial court would impose a term of probation, such an argument must be raised, if at all, through a post-conviction relief proceeding and not on direct appeal. See Stringer v. State, 899 N.E.2d 748, 750 (Ind. Ct. App. 2009).

### III. Restitution

Finally, we address Morris's challenge to the restitution order of $14,972.45 for Jennifer's burial expenses. Morris contends there is insufficient evidence to support that order and that it improperly applies to the C felony charge that was dismissed as part of the plea bargain. However, there is a more fundamental problem with that order: the plea agreement was completely silent on whether Morris could be ordered to pay

9

restitution.[3]  It is clear that when a plea agreement is silent on the issue of restitution, a trial court may not order the defendant to pay restitution as part of his or her sentence; such an order exceeds the scope of the plea agreement.  Sinn v. State, 693 N.E.2d 78, 80 (Ind. Ct. App. 1998).  Thus, we reverse the order that Morris pay $14,972.45 in restitution.

### Conclusion

Although we decline to find that Morris waived his challenge to the appropriateness of his sentence, we find that sentence to be appropriate.  However, we reverse the restitution order against him.

Affirmed in part and reversed in part.

BAKER, J., and RILEY, J., concur.

---

[3] It does not appear that Morris objected before the trial court to there being any award of restitution. However, this court will review the propriety of restitution orders on appeal, even where it was entered without objection by a defendant, because of our duty to correct illegal sentences.  Iltzsch v. State, 972 N.E.2d 409, 412 (Ind. Ct. App. 2012), summarily aff'd in relevant part, 981 N.E.2d 55, 57 (Ind. 2013).